DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

CASE NO.:

YVONNE WEBSTER-PRYCE, individually
and as Personal Representative of the Estate of
KEN WEBSTER, deceased,

      Plaintiff,

vs.

THE UNITED STATES OF AMERICA,

      Defendant.
_____/

## COMPLAINT FOR WRONGFUL DEATH AND DAMAGES

The Plaintiff, YVONNE WEBSTER-PRYCE, individually and as Personal Representative of the Estate of KEN WEBSTER, deceased, on behalf of the estate and all potential beneficiaries and/or survivors, sues Defendant, THE UNITED STATES OF AMERICA, for damages, and alleges:

### GENERAL ALLEGATIONS AS TO ALL COUNTS

1. This is an action for damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, interest and attorneys' fees.

2. This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, and Plaintiff has complied with all administrative prerequisites to the institution of suit. On November 30, 2010, Plaintiff timely presented administrative claims for damages to the United States Federal Aviation Administration pursuant to the provisions of 28 U.S.C. § 2675. The Federal Aviation Administration denied the claims on January 20, 2011.

3. This Court has jurisdiction over the instant action pursuant to 28 U.S.C. § 1331, in that this case arises under the Federal Tort Claims Act, and pursuant to 28 U.S.C. § 1346, this Court has original jurisdiction of this action against the Defendant, THE UNITED STATES OF AMERICA.

4. Venue is proper in the Virgin Islands, St. Croix Division, under 28 U.S.C. § 89(c), 1391(e) and 1402(b).

5. At all times material hereto, the Plaintiff, YVONNE WEBSTER-PRYCE, is and was a citizen and resident of Frederiksted, St. Croix, Virgin Islands, has been duly appointed as the Personal Representative of the Estate of her biological brother, KEN WEBSTER, deceased, and is entitled to bring this claim on behalf of the Estate and all survivors pursuant to the Virgin Islands Wrongful Death Act, 5 V.I.C. § 76. See Order Appointing Personal Representative attached as **Exhibit "A."**

6. At all times material, decedent, KEN WEBSTER, was a resident of Frederiksted, St. Croix, Virgin Islands .

7. The potential beneficiaries of the Estate of KEN WEBSTER are as follows:

   a. The Estate of KEN WEBSTER;

   b. CLEOPATRA LEOLA WEBSTER, surviving mother of KEN WEBSTER;

   c. YVONNE WEBSTER-PRYCE, surviving sister of KEN WEBSTER;

   d. JELANI A. SASSO, surviving son of KEN WEBSTER, age 26 at the time of his father's death, as a blood relative partly or wholly dependent on decedent for support or services; and

    e.    O. K. W., surviving son of KEN WEBSTER, age 14 at the time of his father's death.

8. At all times material, Defendant, THE UNITED STATES OF AMERICA, through its agency and/or instrumentality, the FEDERAL AVIATION ADMINISTRATION (hereinafter "FAA"), was responsible for air traffic control services as pertaining to pilots operating under Visual Flight Rules (hereinafter "VFR") and Instrument Flight Rules (hereinafter "IFR").

9. On December 3, 2008, KEN WEBSTER was flying a 1977 Rockwell Twin Commander 690B, Serial Number N318WA (hereinafter "N318WA") under Visual Flight Rules near Rio Grande, Puerto Rico.

10. The pilot of N318WA, KEN WEBSTER, was in communication with air traffic controllers in order to land at Luis Munoz Marin International Airport (TJSJ), in San Juan, Puerto Rico.

11. At approximately 1600 EST on December 3, 2008, the pilot of N318WA was flying at approximately eight thousand eight hundred feet and contacted San Juan CERAP and advised that he was "descending out of eight point eight".

12. At approximately 1600 EST, San Juan CERAP instructed the pilot of N318WA to "turn left heading two seven zero, maintain VFR at or above two thousand five hundred". The pilot of N318WA acknowledged and complied with the controller's instructions.

13. At approximately 1603 EST, San Juan CERAP instructed the pilot of N318WA to "delete the altitude restriction"; the pilot of N318WA acknowledged. The air traffic controller did not cancel the heading vector, even though the vector placed the accident aircraft on a course directly into an area of dangerous obscured terrain and deteriorating weather, all known to air traffic control personnel.

14. At approximately 1604 EST, San Juan CERAP queried the pilot of N318WA to "say

altitude;" the pilot of N318WA replied "descending from three point two."

15. At approximately 1604 EST, San Juan CERAP said to the pilot of N318WA "confirm you are in VFR conditions, the minimum vectoring altitude in your area is five thousand five hundred feet." The response made by N318WA was unintelligible to the controller, and the controller's response to N318WA was "I missed that, say again."

16. At approximately 1604 EST the pilot of N318WA requested "could we steer right...will be in and out of some clouds right now." The controller responded "Be advise you maintain VFR, the minimum vectoring altitude in your area is five thousand five hundred."

17. There were no further communications from the pilot of N318WA. N318WA crashed into terrain near Rio Grande, Puerto Rico.

18. Having never ensured that the pilot of N318WA was in VFR conditions, the controller failed to issue a "Safety Alert" to the pilot of N318WA when the controller was aware that the aircraft was in a position/altitude that placed it in an unsafe proximity to terrain.

19. Although it was obvious that the pilot of N318WA was following the air traffic controller's instructions for his arrival in TJSJ, the controller failed to cancel the heading vector that placed the aircraft on a course directly into an area of dangerous obscured terrain and deteriorating weather, all known to air traffic personnel. The air traffic controller proceeded to communicate with other aircraft, with periods of silent gaps in communication, during which the pilot of N318WA could have been given updated advisories, or could have been directed to avoid the terrain.

20. At all times material, the FAA is an agency of the United States Department of Transportation and through its officers, employees and agents exercises sole and exclusive control of all

aircraft operating within the controlled airspace of the United States and its territories and of all airports with an operating control tower.

21. The FAA through its officers, employees and agents, is required to provide air traffic control services to all aircraft, within controlled airspace, and at airports with an operating control tower. Among the duties of the FAA is to supply through its employees and/or agents, flight following and monitoring in accordance with the FAA internal procedures set out in FAA Order JO 7110.65, titled Air Traffic Control. Applicable portions of the Air Traffic Control Manual require FAA controllers to provide air traffic control services, including, but not limited to, providing accurate and timely weather advisories, navigational assistance, altitude, airspeed, heading, clearances, flight vectors, aircraft separation, aircraft sequencing, safety notices, safety alerts, safety information and warnings.

22. On December 3, 2008, N318WA was operating within controlled airspace and was under the exclusive control and authority of the FAA through it officers, employees and agents. FAA controllers at San Juan Approach Control Facility (CERAP) had access to radar data which identified N318WA, its altitude, airspeed and aircraft make and model, as well as its intended flight path. FAA controllers had access to data which identified local terrain and potential conflicts.

23. The United States, through its agency and/or instrumentality, the FAA, had a duty to decedent, KEN WEBSTER, to exercise due care to disseminate accurate, complete and current weather-related information and other information pertinent to the pilot of N318WA during his entire flight.

24. On December 3, 2008, the United States, through its officers, employees, and agents at the

FAA, including, but not limited to. the San Juan CERAP, its controllers and their supervisors in radio and radar contact with N318WA, carelessly and negligently failed to follow mandatory and applicable Federal Aviation Regulations and FAA procedures and orders governing flight services and air traffic control operations, and otherwise failed to provide adequate and proper air traffic control services to N318WA, by, among other things:

a. failing to properly observe and disseminate accurate, complete and current information relevant and pertinent to N318WA, including navigational assistance, timely furnishing of weather data, surveillance and other guidance;

b. failing to issue a safety alert to the pilot of N318WA;

c. failing to render appropriate radar services to the pilot of N318WA;

d. failing to provide directive instructions as to any safe, alternative flight routes around said hazardous conditions, and;

e. failing to suggest a turn or change in altitude for N318WA to avoid a potential conflict, particularly since N318WA was operating in an area of known mountainous terrain and deteriorating weather conditions.

25. The negligent acts and omissions of the United States, through its agency and/or instrumentality, the FAA, caused and/or contributed to this fatal crash by not thoroughly informing the pilot of N318WA of the imminent conflict with terrain..

26. As a direct and proximate result of the Defendant's failures, N318WA collided with a mountain near Rio Grande, Puerto Rico, resulting in the death of KEN WEBSTER.

27. The crash and any alleged damage or loss sustained by the Plaintiff was caused in whole or

in part by the careless, negligent or wrongful acts or omissions of the United States of America, through its agency and/or instrumentality, the FAA.

## COUNT I - NEGLIGENCE

28. At all times material, Defendant, THE UNITED STATES OF AMERICA, owed a duty to Plaintiff's decedent to exercise reasonable care in providing air traffic control services.

29. On or before December 3, 2008, Defendant, THE UNITED STATES OF AMERICA, was negligent and in breach of its duties, in that the FAA personnel responsible for providing air traffic control and flight following to the accident aircraft, and the FAA personnel responsible for supervising, instructing, qualifying and training said personnel:

   a. failed to prevent an occurrence of controlled flight into terrain in controlled airspace;

   b. failed to terminate the 270 degree vector at the appropriate time and failed to provide guidance and direction to resume on course for approach and landing;

   c. failed to use best judgment to ensure the safety of the occupants of the accident aircraft;

   d. failed to issue safety alerts as required under FAA Order 7110.65 2-1-6;

   e. failed to warn the pilot that the aircraft was at an altitude that placed it in unsafe proximity to terrain, in violation of FAA Order 7110.65 2-1-6;

   f. failed to advise and inform the pilot of the purpose of an assigned vector and/or to inform him of what to expect once the vector had been completed;

   g. failed to cancel the assigned vector when maintaining the assigned vector took the aircraft directly into dangerous terrain and weather;

   h. failed to provide appropriate radar navigational guidance;

i. Failed to take action as required under FAA Order 7110.65 10-1-1 to address an imminent emergency;

j. failed to provide clear, concise standard instructions to the pilot of N318WA as required by relevant rules, practices, and regulations;

k. failed to properly and adequately train, certify, and/or re-certify the air traffic control personnel responsible for the accident flight;

l. failed to properly or adequately evaluate, monitor and supervise the air traffic control personnel responsible for the accident flight;

m. failed to have present adequate, experienced and competent personnel to appropriately handle the situation involved;

n. failed to issue pertinent weather information and failed to recognize that the aircraft and its occupants were in danger due to Defendant's negligence, and failed, despite the pilot's request, to issue an immediate change in heading assignment and/or instructions to climb to a safe altitude;

o. failed to render appropriate radar services to aircraft in weather difficulty as per 7110.65 10-2-8;

p. failed to warn the pilot of the hazardous weather conditions and dangerous terrain on the heading assigned by the controllers and in the path of the aircraft when these dangers were reasonably apparent to the air traffic controllers;

q. failed to warn the pilot of the immediate and extreme danger to his aircraft and passengers; and

    r.    failed to warn the pilot of the danger the controllers created for the aircraft by assigning a vector which was dangerous and unsafe by directing the aircraft into obscured terrain when the danger was reasonably apparent to controllers, and the controllers were in a superior position to perceive that the pilot and passengers were in danger of grave injury.

30.    As a direct and proximate result of the crash, and the consequent death of KEN WEBSTER, YVONNE WEBSTER-PRYCE brings this action under the Federal Tort Claims Act and/or whatever law this Court deems appropriate, and claims all damages to which the Estate of KEN WEBSTER and its beneficiaries are entitled pursuant to the Virgin Islands Wrongful Death Act, 5 V.I.C. § 76.

31.    As a direct and proximate result of the wrongful death of Plaintiff's decedent, KEN WEBSTER, the decedent's Estate and beneficiaries have suffered the following damages:

    a.    Pain and suffering of KEN WEBSTER, prior to his death;

    b.    Pain and suffering of the survivors, beneficiaries and heirs to KEN WEBSTER;

    c.    Lost society, companionship, guidance and services of KEN WEBSTER to his survivors, beneficiaries and heirs;

    d.    Loss of support in money or in kind;

    e.    Lost net accumulations;

    f.    Lost value of life;

    g.    Funeral expenses;

    h.    Any and all other damages to which the survivors, beneficiaries, and/or the Estate of KEN WEBSTER may be entitled to recover under applicable law.

WHEREFORE, Plaintiff, YVONNE WEBSTER-PRYCE, as Personal Representative of the Estate of KEN WEBSTER, deceased, demands judgment against Defendant, THE UNITED STATES OF AMERICA, for damages, as set forth in Virgin Islands Wrongful Death Act, 5 V.I.C. § 76, in a sum in excess of $75,000.00, together with interest and costs, and such other relief deemed appropriate by this Court.

Dated: May 31st, 2011.

LAW OFFICES OF ROBERT L. PARKS, P. L.
2121 Ponce de Leon Boulevard, Suite 505
Coral Gables, Florida 33134
Phone: 305-445-4430
Fax: 305-445-4431
E-Mail: Bob@RLPlegal.com
By: Robert L. Parks, Esquire

and

LAW OFFICE OF MARTIAL A. WEBSTER
#116 Queen Cross Street
Frederiksted, St. Croix
U. S. Virgin Islands 00840
Phone: 340-772-3555
Fax: 340-772-0025
E-Mail: attywebster@hotmail.com

By _____
Martial A. Webster, Esquire

*Attorneys for Plaintiff*